IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARVIN CLYDE OLIVE | § | CIVIL ACTION NO._____ |
| | § | |
| *Plaintiff,* | § | |
| | § | JUDGE _____ |
| vs. | § | |
| | § | |
| YTL INTERNATIONAL INC., | § | |
| and TRACTOR SUPPLY | § | |
| COMPANY | § | JURY DEMANDED |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff, Marvin Clyde Olive, complaining of YTD International, Inc. and Tractor Supply Company and in support thereof would show unto the Court the following:

## I.
## PARTIES

1. Plaintiff Marvin Clyde Olive is a resident and citizen of Old River Winfree, Chambers County, Texas and at all times relevant hereto lived in Chambers County, Texas.

2. Defendant YTL International, Inc. (hereinafter "YTL") is a foreign corporation doing business in Texas for the purpose of accumulating monetary profit. Plaintiff's causes of action arose out of business conducted by YTL in Texas. YTL's principal office is located at 17517 Fabrica Way #H, Cerritos, CA

90703. YTL may be served with citation though its registered agent, Yating Lu, 17517 Fabrica Way #H, Cerritos, CA 90703 or wherever he or she may be found.

3.     Defendant Tractor Supply Company (hereinafter "Tractor Supply") is a foreign corporation doing business in Texas for the purpose of accumulating monetary profit. Tractor Supply's principal office is located 5401 Virginia Way, Bentwood, TN 37027-7536. Tractor Supply may be served with citation though its registered agent C.T. Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546, or wherever it may be found.

## II.
## VENUE AND JURISDICTION

4.     Venue lies in this Court because the incident made the basis of this suit and all or a substantial part of the events or omissions giving rise to the claim occurred in Chambers County, Texas.

5.     The Court has jurisdiction because the parties herein are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. 28 U.S.C. § 1332.

## III.
## FACTUAL BACKGROUND

6.     Plaintiff brings this suit to collect a legal debt of money damages owing to Plaintiff due to a crippling injury that took place on or about March 09, 2020. On that occasion, Mr. Olive's left arm was traumatically crushed by a

powered Log Splitter designed and manufactured by YTL and exclusively offered to the public by Tractor Supply under the "CountyLine" brand (hereinafter "Log Splitter").

7. The Log Splitter is unreasonably dangerous. First, the Log Splitter does not have a beam lock pin or other similar device to safely secure the splitter in the vertical position. Second, while the hydraulic ram which drives the splitting wedge will stop its downward or forward motion if the control valve handle is released, the hydraulic ram and splitting wedge will not stop retracting if the control valve handle is released during retraction. Last, there is no automatic shutoff if the beam begins to fall from the vertical position or otherwise becomes unstable.

8. The retracting splitting wedge passes between welded plates mounted on both sides of the beam, exposing users to a dangerous pinch point. When weighed against the unreasonable danger created by this pinch point, there is no reasonable engineering explanation for the failure to create an automatic stop function for the hydraulic ram's retraction when the control valve handle is released. Feasible and reasonable alternative designs exist that would have provided an automatic stop function for the hydraulic ram and splitting wedge retraction on the Log Splitter, and these designs would have eliminated the risk of bodily injury to users and persons such as Mr. Olive.

9. At the time of the incident, the Log Splitter had not been altered or changed, and was in substantially the same condition, as it was when it left Defendants' possession. The Log Splitter was in the vertical position and Mr. Olive was kneeling in the "operator zone" when the Log Splitter began to fall backwards. The base of the Log Splitter struck Mr. Olive, causing him to lose his balance and fall forward. Mr. Olive's arm fell on to the retracting hydraulic ram and splitting wedge. As the ram continued to retract Mr. Olives arm became trapped between the splitting wedge and the two metal plates welded on the sides of the beam severely crushing and tearing Mr. Olive's arm.

10. As a result of the incident Mr. Olive has endured three painful, extensive, and expensive surgeries. Mr. Olive continues with physical rehabilitation from the incident and resulting surgeries. Mr. Olive has also experienced several serious complications arising from the surgeries including, but not limited to, damage to his kidneys and his cognitive ability.

11. The Log Splitter's lack of any type of locking mechanism to keep the beam in the vertical position, continued retraction of the hydraulic ram and splitting wedge after the control valve handle is released, and lack of an automatic shutoff switch if the beam begins to tip or otherwise becomes unstable rendered the Log Splitter unreasonably dangerous. YTL and Tractor Supply Company knew or should have known that the lack of these safety mechanisms created an

unreasonably dangerous device. YTL and Tractor Supply knew or should have known that there were feasible and practical alternative designs that would have eliminated the risk of a user getting their arm trapped and subsequently crushed by the moving parts. YTL and Tractor Supply's actions and failures were the producing and/or proximate cause of Mr. Olive's injuries.

12. Further, there is no contributory and/or comparative negligence on the part of Mr. Olive. To the contrary, this occurrence and Mr. Olive's resulting injuries and damages were proximately caused by the negligence, as that term is understood in law, by YTL and Tractor Supply. The unreasonably dangerous and defective condition of the Log Splitter manufactured and designed by YTL for exclusive distribution by Tractor Supply was the producing and/or proximate cause of the injuries and damages of the Plaintiff.

## IV.
## CAUSES OF ACTION

### STRICT PRODUCT LIABILITY

13. The CountyLine Log Splitter was unsafe, defective, and unreasonably dangerous as designed, manufactured, and sold. YTL and Tractor Supply designed, formulated, constructed, fabricated, produced and assembled the Log Splitter. There are no federal governmental standards or regulations setting out mandatory standards or regulations of safety applicable to the Log Splitter. The

Log Splitter was not subject to pre-market licensing or approval by the federal government or an agency of the federal government.

    14.    The Log Splitter was defective, unsafe and unreasonably dangerous in the following particulars:

    a.    The CountyLine 25 ton Log Splitter has a locking pin that secures the beam/splitter in the horizontal position. However, the Log Splitter has absolutely no locking mechanism to lock the device in the vertical position, which poses an unreasonable risk of harm to users of the Log Splitter because users, or others in close proximity, could be struck by the beam if the beam falls or became unstable, thereby causing serious bodily injury or death. Providing a mechanism to lock the beam in the vertical position was feasible and the cost of a design change was not prohibitive when balanced with the danger created by the beam's ability to fall from the vertical position.

    b.    The hydraulic ram and splitting wedge are actuated by either pushing or pulling on the subject Log Splitter's control valve lever. When the user pushes the control valve lever forward, towards the base of the beam, the hydraulic ram and splitting wedge extends outward. If, at any time, the user releases the control valve lever as the ram and wedge travel down the beam the movement of the hydraulic ram stops immediately. However, when the control valve lever is pulled upwards, causing the ram and wedge to retract, the movement of the ram will not stop if the control valve lever is released. This causes an unreasonably dangerous condition because the Log Splitter has two metal plates welded on each side of the beam, and as the hydraulic ram and the splitting wedge pass between these two plates a dangerous pinch point is created which cannot be avoided by the user's release of the control valve lever. Designing the Log Splitter so that the actuation of the hydraulic ram is automatically stopped, regardless of its direction of travel, when the control valve lever is released would have eliminated this unreasonably dangerous condition without impairing the utility of the Log Splitter or its operation. Causing the movement of the hydraulic ram to stop when the user releases the control valve lever was feasible. and the cost of such a design change was not prohibitive when balanced with the

danger created by the rams continued retraction after the lever is released.

    c.    Once the hydraulic ram has started to retract, if the beam begins to tip or fall from the vertical positon, or otherwise become unstable, the actuation will not stop resulting in an unreasonably dangerous condition to the user and those in close proximity to the Log Splitter. Incorporating an automatic stop function triggered by the beam's falling or tipping from the vertical positon would have eliminated this unreasonably dangerous condition without impairing the utility of the Log Splitter or its operation. Equipping the Log Splitter with an automatic stop function if the beam becomes unstable when in the vertical positon was feasible, and the cost of such a design change was not prohibitive when balanced with the danger created by the ram's continued retraction if the beam becomes unstable or falls while in the vertical position.

15. The defective nature of the CountyLine Log Splitter in question was a producing and/or proximate cause of the injuries and damages suffered by Mr. Olive.

## **Failure to Warn**

16. YTL and Tractor Supply failed to warn users of the unsafe and unreasonably dangerous conditions created by the Log Splitter. Specifically, YTL and Tractor Supply failed to warn, or failed to adequately warn, of the following conditions:

    a. As discussed above, the CountyLine 25 ton Log Splitter has a locking pin that secures the beam/splitter in the horizontal position. However, the Log Splitter has no locking mechanism to lock the device in the vertical position. YTL and Tractor Supply failed to include any warning, either on the device itself or in the operation manual, that the beam, when in the vertical positon, could not be locked into place, that the beam could become unstable, and that the beam could fall

   backwards and potentially strike the operator or other persons in close proximity to the Log Splitter, thereby causing serious bodily injury or death.

  b. YTL and Tractor Supply failed to warn users that when the Log Splitter control valve lever is pulled upwards, causing the ram and wedge to retract, the movement of the ram will not stop if the control valve lever is released. This causes an unreasonably dangerous condition because the Log Splitter has two metal plates welded on each side of the beam, and as the hydraulic ram and the splitting wedge pass between these two plates a dangerous pinch point is created which cannot be avoided by the user's release of the control valve lever. Due to the continued motion of the hydraulic ram between the two guide plates, a person that becomes trapped between the retracting ram and the guide plates will suffer catastrophic injury or death. There are no warnings of any kind on either the Log Splitter or the owner's manual warning users that the retraction of the hydraulic ram will not stop upon release of the control valve lever.

## **Gross Negligence**

17. YTL and Tractor Supply were grossly negligent in the design, manufacture, marketing, and sale of the CountyLine Log Splitter in question in the following particulars:

 a. A safer design that would have prevented injury to Mr. Olive's arm already existed in the market place, yet YTL and Tractor Supply Company intentionally and willfully ignored the safer design and continued to offer the subject Log Splitter to the public. Specifically, other log splitter manufactures had designed and manufactured log splitters where the movement of the hydraulic ram (regardless of direction) would stop immediately if the control valve lever was released. This safer design has been in the marketplace for years. Both YTL and Tractor Supply Company knew or should have known of the safer design, but intentionally ignored the safer design choosing profits over safety.

b. Other log splitter manufacturers offer models equipped with a locking mechanism that is capable of locking the beam in *either* the horizontal or vertical position. A locking mechanism which locked the beam of the Log Splitter in the vertical position is a safer design that would have prevented injury to Mr. Olive. YTL and Tractor Supply Company intentionally and willfully ignored the safer design and continued to offer the subject Log Splitter to the public. This safer design has been in the market place for years, and both YTL and Tractor Supply Company knew or should have known of the safer design, but intentionally ignored the safer design again choosing profits over safety.

## **Negligence**

18. YTL and Tractor Supply were negligent in the design, manufacture, marketing, and sale of the CountyLine Log Splitter in question in the following particulars:

   a. Negligent design of the CountyLine Log Splitter in a manner that created an unreasonable risk of harm by not adequately guarding dangerous moving parts exposing users and persons in the vicinity of the Log Splitter while in operation to serious bodily injury or death.

   b. Negligent failure to warn users and persons in the vicinity of the CountyLine Log Splitter regarding the inability to adequately secure the Log Splitter in the vertical position, to stop the retraction of the hydraulic ram when the control valve lever is released, and to have an automatic shut-off function if the beam begins to fall or otherwise becomes unstable.

   c. Negligent manufacture of the CountyLine Log Splitter in a manner that created an unreasonable risk of harm by not including means to secure the Log Splitter in the vertical position, not including means to stop the retraction of the hydraulic ram when the control valve lever is released, and not including an automatic shut-off function if the beam begins to fall or otherwise becomes unstable, all of which expose users and persons in the vicinity of the Log Splitter while in operation to serious bodily injury or death.

19.     The negligence of YTL and Tractor Supply Company was a proximate cause of Mr. Olive's resulting injuries and damages which are described below.  No action or failure to act by Mr. Olive in any way caused or contributed to the cause of the occurrence or Mr. Olive's injuries.

## V.
## DAMAGES

20.     Upon the trial of this cause, it will be shown that Mr. Olive sustained injuries and damages as a proximate result of YTL and Tractor Supply Company's negligence, as well as their design, manufacturing, marketing, and sale of the CountyLine Log Splitter in an unreasonably dangerous and defective condition. Mr. Olive respectfully requests that a Court and jury determine the amount of the losses he has incurred in the past, not solely in terms of monetary and financial loss, but also in terms of good health and freedom from pain and worry. From the date of the incident in question up until the time of trial of this matter, the elements of damages to be considered separately and individually for the purposes of determining the sum of money that will fairly and reasonably compensate Mr. Olive are as follows:

   a.   Severe and permanent physical impairment which renders Mr. Olive largely disabled from the date of the incident made the basis of this lawsuit up until the time of trial;

   b.   Great physical pain and mental anguish that Mr. Olive has suffered from the date of the incident in question up to the time of trial;

    c.      Disfigurement suffered by Mr. Olive from the date of the incident made the basis of this lawsuit up to the time of trial;

    d.      Loss of enjoyment of life for Mr. Olive had he been able to live a normal life in the past up to the time of trial;

    e.      The amount of reasonable medical expenses necessarily incurred in the treatment of Mr. Olive's injuries from the date of the incident in question up to the time of trial;

    f.      The partial or permanent disability Mr. Olive has suffered and will suffer up to the time of trial;

    g.      Cost of care, including rehabilitation care and therapy, physical therapy, occupational therapy, prosthetics and other care that was medically reasonable and necessary for the care of Mr. Olive from the time of this incident in question to the time of trial.

21.    All of the damages sought herein, as a result of the Defendant's actions, are within the jurisdictional limits of this Court. Plaintiff further pleads for costs and pre-judgment and post-judgment interest as allowed by law.

## VI.
## CONDITIONS PRECEDENT

22.    All conditions precedent have been performed or have occurred.

## VII.
## JURY DEMAND

23.    Plaintiff demands a trial by jury and has tendered the appropriate fee with Plaintiff's Original Petition.

# VIII.
# PRE-JUDGMENT and POST-JUDGMENT INTEREST

24. Plaintiff further pleads for pre-judgment and post-judgment interest.

# IX.
# PRAYER

25. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

a. That the Defendants be cited to appear and answer herein;

b. That upon a trial of the merits of this cause, that Plaintiff have and recover a judgment against the Defendants, jointly and/or severally, awarding all damages, general and special, requested and prayed for herein, and for all other relief to which Plaintiff deems and proves himself to be entitled.

Respectfully submitted,


RESPECTFULLY SUBMITTED,

/s/ *Terry Joseph*
Terry Joseph
Attorney-in-Charge
TX Bar No. 11029500
SDTX Bar No. 11538
William Dills
TX Bar No. 24067421
MATTHEWS, LAWSON, MCCUTCHEON, & JOSEPH, PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057
TEL: (713) 355-4200
FAX: (713) 355-9689
tjoseph@matthewsfirm.com
wdills@matthewsfirm.com